685 So.2d 424 (1996)
STATE of Louisiana, Appellee,
v.
Sandra Lacrese STARR, Appellant.
No. 28934-KA.
Court of Appeal of Louisiana, Second Circuit.
December 11, 1996.
*425 Peter Edwards, Monroe, for Appellant.
Richard Ieyoub, Attorney General, Jerry L. Jones, District Attorney, H. Stephens Winters, Assistant District Attorney, for Appellee.
Before STEWART, GASKINS and PEATROSS, JJ.
STEWART, Judge.
A jury found the defendant, Sandra Lacrese Starr, guilty of Second Degree Murder, a violation of La. R.S. 14:30. The trial court imposed the mandatory sentence of life imprisonment without benefit. Starr urges two assignments of error inclusive of a request for patent error review. For these reasons, the conviction and sentence of the defendant are affirmed.

*426 FACTS
Sandra Starr (defendant) and Fredrick Hamilton (victim) were involved in a off-andon relationship for approximately five to six years. Family and friends described the relationship as abusive and filled with fights and arguments. Several witnesses testified to seeing the couple fight and argue on numerous occasions. Together they had one child, Shandra Starr. The defendant also had another child from a previous relationship. The couple lived together off and on and had previously lived together with relatives.
On March 30, 1993, the victim and two friends, Maurice Lyons (Lyons) and Ronnie Henderson (Henderson) traveled to various pawn shops in the Monroe area where the victim pawned a wedding ring and a stereo receiver. Lyons and Henderson testified that the victim said he needed money to pay the defendant's light bill. After he pawned the items the three traveled to the defendant's apartment. Once they arrived the victim was greeted by his daughter who was playing outside of the apartment. The victim went inside the apartment, and witnesses heard him and the defendant arguing. At some point, the door to the apartment was closed. The victim was in the apartment for approximately 20 minutes when witnesses outside heard a shot. The defendant then opened the door with a gun in her hand and told Lyons and Henderson something to the effect of "Y'all come and get this M.F. I just shot him." Lyons and Henderson carried the unconscious victim from the apartment to the car and took him to the hospital. The victim died of a single gunshot wound to the right cheek which caused injuries to the brain. The defendant testified at trial alleging that the shooting was accidental.

DISCUSSION
Assignment of Error No. 1: The trial court erred in that there was not sufficient evidence to support the verdict.
The defendant alleges the state failed to prove that she did not shoot Hamilton in self-defense in that there was not sufficient evidence to support the verdict.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bellamy, 599 So.2d 326 (La. App. 2d Cir.), writ denied, 605 So.2d 1089 (1992).
In order to convict the defendant of second degree murder the state had to prove beyond a reasonable doubt that (1) the defendant killed a human being; (2) when the offender had a specific intent to kill or inflict great bodily harm. La. R.S. 14:30.1; State v. Thompson, 27,512 (La.App.2d Cir. 12/6/95), 665 So.2d 643. When a defendant asserts self-defense in a homicide case, the state has the affirmative duty of proving beyond a reasonable doubt that the homicide was not committed in self-defense. State v. Cotton, 25,940 (La.App.2d Cir. 3/30/94), 634 So.2d 937; State v. Harvey, 26,613 (La.App.2d Cir. 1/25/95), 649 So.2d 783. A homicide is justifiable when committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger. La. R.S. 14:20(1); State v. Mitchell, 26,070 (La.App.2d Cir. 6/22/94), 639 So.2d 391.
The Jackson standard applies to both direct and circumstantial evidence. Direct evidence consists of testimony from a witness who actually saw or heard an occurrence, proof of the existence of which is at issue. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Lilly, 468 So.2d 1154 (La.1985); State v. Turner, 591 So.2d 391 (La.App. 2d Cir.1991), writ denied, 597 So.2d 1027 (La.1992). For circumstantial evidence to convict, it must exclude every reasonable hypotheses of innocence. La. R.S. 15:438.
This court's authority to review questions of fact in a criminal case is limited *427 to the sufficiency of the evidence evaluation under Jackson, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 5(C); State v. McCray, 621 So.2d 94 (La.App. 2d Cir. 1993). It is the function of the jury to assess credibility and resolve conflicting testimony. In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the jury, is sufficient support for the requisite factual conclusion. State v. Combs, 600 So.2d 751 (La.App. 2d Cir.1992), writ denied, 604 So.2d 973 (La.1992); State v. Harper, 27,278 (La.App.2d Cir. 8/23/95), 660 So.2d 537. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Golson, 27,083 (La.App.2d Cir. 6/21/95), 658 So.2d 225.
A reasonable trier of fact could have concluded that the killing was not justifiable. The evidence presented showed the defendant had previously made threats against the victim, the defendant had previously struggled with her friend over a gun which she was attempting to reach during an argument with the victim, and the defendant's account of where she was standing at the time the gun accidentally discharged is contrary to the testimony of the pathologist, Dr. Stephen Timothy Hayne, who performed the autopsy.
At trial, the defendant did not present sufficient evidence to dispute the state's evidence that the shooting was not done in selfdefense. According to testimony, the defendant and victim were involved in fights and/or arguments on many occasions. Despite the numerous altercations, the defendant and other witnesses testified that the defendant had not gone or been taken to the hospital after any of the altercations. There was no testimony or evidence presented which indicated the defendant ever sustained great bodily injury from any of the altercations. The defendant testified that she did not want anyone to know of the beatings she received therefore she did not seek medical treatment; however, from her own testimony and that of other witnesses, it was apparent that the altercations between the defendant and the victim were not well-kept secrets. Even the defendant's own testimony failed to dispute the state's evidence that the shooting was not done in self-defense. While she did indicate that she and the victim were struggling at the time of the shooting, the defendant's testimony was that the shooting was accidental.
The defendant testified that on the day of the shooting, she and the victim were arguing and as the victim was talking loud, she knew what he was going to do. She walked toward the door, but the victim kicked it closed with his feet. She argued that the victim began shaking her and at some point began choking her. During the struggle, she retrieved the gun from her purse, and placed it in her hand. As the victim continued to choke her, she used one hand and the thumb of her other hand which contained the gun to push him away. As she was pushing him away the gun discharged. Additionally, the defendant testified that she believed the safety was on the gun and that it was unloaded. She was only attempting to make the victim let her go, and did not intend to kill him.
The defendant's claims of accidental shooting were not made when she gave police statements immediately after the shooting. Several of the investigating officers testified that the defendant did not indicate that the shooting was accidental on the day of the shooting. During the trial, the defendant testified that she was struggling to get free from the victim as he was choking her. She was approximately eight inches away from the victim when the weapon discharged. In her previous statements to the police, she indicated that she broke free from the victim and that he began moving toward her again when she shot him. She stated she was approximately three feet away at the time the single shot was fired.
The defendant's testimony is inconsistent with that of other witnesses. The doctor who performed the autopsy testified that the entrance wound was consistent with a distant shot. He stated that the weapon was probably no closer than one and one-half feet away from the decedent at the time the shot was fired. He went on to explain that the wound did not have the characteristics of one which was fired at point blank range or one that *428 was fired from closer than 18 inches. The wound lacked any powder residue or burn marks that would be indicative of a shot being fired from eight inches away.
Two of the state's witnesses, Selma Powell (victim's aunt) and Angelia Hamilton (victim's sister) testified the defendant told each of them on separate occasions that she had a gun and would use it on the victim. Selma Powell stated that she thought the defendant was kidding. Hamilton likewise stated "I thought maybe she was just talking. I didn't think she was serious about it." These statements were made three weeks to a month prior to the shooting. The defendant testified that she did not make the statements to either of the witnesses.
Tammy Richardson, a friend of the defendant, testified that two to three weeks prior to the shooting, she struggled with the defendant over the gun to keep her from shooting Hamilton. At the time the defendant and victim were arguing; however, the victim had not hit the defendant although he had talked about hitting her. In Richardson's previous statements to the police, she stated that the defendant continuously stated that she was going to shoot Hamilton; however at trial, she denied defendant told her she would kill the victim, only that she (defendant) was tired of the victim's constant abuse.
Another shooting incident occurred several days before the victim was killed, when the defendant shot the windshield of a car which both she and the victim owned. Defendant claims she needed to use the car. When the victim refused, she attempted to shoot the tires but shot the windshield instead. Witnesses to the incident indicated the victim was at the residence of his last girlfriend when the defendant arrived and wanted to talk. When the victim refused to talk, defendant shot at the car. The victim's last girlfriend, Tonya Murray, testified that she and the defendant exchanged words about the victim on the day the car was damaged. Murray stated that she could not remember the exact words as it had been so long, but she (defendant) did state that something would happen to him (victim).
In respect to the self-defense claim, though there was a history of violent behavior in the relationship, according to the defendant, neither she nor the victim had been hospitalized or treated for any injuries as a result of the altercations. Police who arrived on the scene of the shooting testified that the apartment appeared relatively undisturbed except for the blood on the floor, couch, and walls. The officers testified the defendant did not have any noticeable marks, bruises, or scratches at the time they arrived on the scene or when she was taken into custody for questioning. A booking photograph or mug shot of defendant was entered into evidence. The picture does not reveal any marks or bruises on the defendant. One defense witness, Gwendolyn Jackson, who lived near the defendant testified that she saw red marks on the defendant's neck which looked like she had been choked. She also stated she saw a mark on defendant which looked like she had bumped her head. Jackson was the only witness from the scene who testified to seeing the marks.
After a review of the evidence in the light most favorable to the state, according great deference to the jury's decision to accept and reject testimony, it should be concluded that the evidence was sufficient to support the verdict of second degree murder, and that the state proved beyond a reasonable doubt that the defendant did not act in self-defense. The record is devoid of evidence that would support defendant's assertion of self defense or accidental shooting and replete with evidence that indicates this was an act defendant had been considering for some period of time.
This assignment is without merit.

Assignment of Error No. 2: Error Patent.
Defendant's final assignment was a request for this court to review the record for errors patent. This request is unnecessary since such a review is made automatically in all criminal cases. State v. Stamper, 615 So.2d 1359 (La.App. 2d Cir.1993), modified on other grounds, 624 So.2d 1208 (La. 1993).
Our error patent review disclosed that the trial court informed defendant that the prescriptive period for post-conviction relief is "three years from this date." This is a *429 common error. The three-year prescriptive period does not begin to run until the judgment is final under La.C.Cr.P. art. 914 or 922; thus, prescription has not yet begun to run. State v. Mock, 602 So.2d 776 (La.App. 2d Cir.1992); State v. Gladney, 626 So.2d 778 (La.App. 2d Cir.1993). We direct the district court to send appropriate written notice to the defendant within 10 days of the rendition of this opinion and to file proof of defendant's receipt of such notice in the record of the proceedings. State v. Mock, supra; State v. Smith, 600 So.2d 745 (La.App. 2d Cir.1992).

DECREE
For these reasons, the conviction and sentence of Sandra Lacrese Starr are affirmed.
AFFIRMED.