958 So.2d 713 (2007)
STATE of Louisiana
v.
Benyale DAVIS.
No. 2006-KA-1330.
Court of Appeal of Louisiana, Fourth Circuit.
April 25, 2007.
*714 Eddie J. Jordan, Jr., District Attorney, Alyson Graugnard, Assistant District Attorney, New Orleans, LA, for Plaintiff/Appellee.
Laura Pavy, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge PATRICIA RIVET MURRAY and Judge MICHAEL E. KIRBY).
Chief Judge JOAN BERNARD ARMSTRONG.
STATEMENT OF CASE
The defendant, Benyale L. Davis, was charged by bill of information on May 13, 2004, with one count of violating La. R.S. 40:967(B)(1), possession with intent to distribute crack cocaine. On May 21, 2004, he pled not guilty. On June 15, 2004, the trial court denied the defendant's motion to suppress the evidence and found probable cause.
A jury trial was held on June 15, 2005 and the defendant was found guilty as charged.
On January 30, 2006, the defendant was found guilty as a two-time offender. Accordingly, he was sentenced as a multiple offender to serve thirty years at hard labor in the custody of the Department of Corrections. The minute entry notes that the first two years of the defendant's sentence are to be served without benefits. The defendant's counsel immediately filed a motion to reconsider sentence, which the trial court denied. The defendant filed a motion for appeal on January 30, 2006. On February 14, 2006, the trial court amended the defendant's sentence to thirty years at hard labor in the custody of the Department of Corrections without benefit of probation, parole, or suspension.
*715 STATEMENT OF FACT
Officer Octavia Baldassaro, Jr. testified that on the night of November 29, 2003, he was assigned to the special operations division and was working with Officer Ronny Stevens, his partner. Officer Baldassaro further testified that he recalled arresting the defendant and described the events at length. Specifically, Officer Baldassaro stated that he and his partner were on patrol in their police vehicle, traveling lake bound on Bienville Street. Officer Baldassaro testified that the reason he and Officer Stevens were on patrol in this area was because of an increase in crime associated with narcotics trafficking. As for the defendant, Officer Baldassaro testified that he and his partner first observed Davis when their police vehicle was approximately thirty feet away from Bienville's intersection with North Gayoso Street. In particular, Officer Baldassaro testified that he witnessed a gray four-door vehicle disregard the stop sign at the intersection of Bienville and North Gayoso streets and turn right onto Bienville Street.
Officer Baldassaro stated that he and his partner decided to initiate a traffic stop. Accordingly, Officer Stevens activated the car's lights and sirens. However, the driver of the gray vehicle, later identified as the defendant, kept driving for two blocks before he pulled over in the 3300 block of Bienville Street. Officer Baldassaro testified that after the gray vehicle pulled over he and Officer Stevens exited their vehicle. Officer Stevens then approached the driver's side of the gray vehicle while Officer Baldassaro approached the passenger side. Officer Baldassaro testified at trial that as he approached the vehicle he noticed the defendant leaning forward towards the vehicle's steering wheel and looking over his left shoulder at Officer Stevens. Officer Baldassaro also noticed that there was a passenger in the vehicle, later identified as Ms. O'Dwyer Fluker. Officer Baldassaro then heard Officer Stevens ask the defendant to get out of the vehicle. As the defendant was stepping out of the vehicle, Officer Baldassaro opened the passenger side door and observed what he thought was a piece of crack cocaine sitting on the driver's seat. Officer Baldassaro then ordered Ms. Fluker to place her hands on the vehicle's dashboard while he walked around to the driver's side of the vehicle. Officer Stevens then asked Officer Baldassaro to examine the area around the vehicle's steering wheel where he had observed the defendant leaning. Officer Baldassaro stated that as he looked into the vehicle he could see that the dashboard was composed of two pieces and that the lower half was loose and hanging down. He looked into the gap between the two sections of dashboard and noticed a plastic bag. Officer Baldassaro removed the bag and saw that it contained numerous pieces of what he believed to be crack cocaine. The State introduced the plastic bag and its contents into evidence at trial as State's exhibit 1.
Officer Baldassaro then told Officer Stevens about his discovery, and Officer Stevens then handcuffed defendant and advised him of his rights and the reason for his arrest. Officer Baldassaro testified that he then went back to the passenger side of the vehicle and asked Ms. Fluker to step out of the car and sit on the curb. Officer Baldassaro then entered the vehicle's glove box to retrieve the registration and insurance papers. However, Officer Baldassaro found one thousand dollars in U.S. currency stashed in the glove box. The State introduced the currency found inside the glove compartment as State's exhibit 2. Moreover, Office Baldassaro also noted that Officer Stevens found six hundred and seven dollars in U.S. currency on defendant's person. Further, Officer Baldassaro stated that he issued citations to the defendant for disregarding a stop sign *716 and driving on a suspended license. The State introduced the citations as State's exhibit 3. Additionally, Officer Baldassaro testified that because of the amount of drugs found in the defendant's vehicle he and Officer Stevens decided to ask for a K-9 unit to come out and search the vehicle. Officer Baldassaro stated that the K-9 unit found no additional narcotics in the vehicle. Finally, Officer Baldassaro testified that the defendant was transported to lockup after the K-9 unit's fruitless search.
The State also called Officer Ronny Stevens as a witness at trial. Officer Stevens testified that at the time of the defendant's arrest he was assigned to Special Operations and partnered with Officer Baldassaro. Officer Stevens testified that he recalled arresting the defendant in the 3300 block of Bienville Street on the night of November 29, 2003. Specifically, Officer Stevens testified that he and Officer Baldassaro were patrolling in their marked police unit and traveling in a lake-bound direction on Bienville Street. Stevens further stated that as they approached Bienville's intersection with North Gayoso Street they noticed a four door gray vehicle disregard a stop sign and turn off of North Gayoso onto Bienville directly in front of their police unit. Officer Stevens testified that they turned on the unit's lights and sirens and pulled defendant's vehicle over in the 3300 block of Bienville.
Officer Stevens stated that after the defendant's car pulled over, he exited the police unit and approached the driver's side of the defendant's vehicle. Officer Stevens stated that as he reached the window he observed the driver leaning forward in the driver's seat with his left hand reaching up underneath the dashboard towards the area near the vehicle's gas and break pedals. Officer Stevens testified that based upon his experience he concluded that the defendant was attempting to conceal something underneath the dashboard. Accordingly, Officer Stevens ordered the defendant out of his vehicle at this time. Officer Stevens noted that Officer Baldassaro noticed what appeared to be crack cocaine inside the passenger compartment shortly after the defendant exited the vehicle. Immediately thereafter, Officer Stevens placed the defendant under arrest and conducted a pat down search of defendant's person. Officer Stevens noted that the search turned up six hundred and seven dollars in U.S. currency. Officer Stevens stated that in addition to the currency found on defendant's person, Officer Baldassaro also found one thousand dollars in U.S. currency inside the vehicle's glove compartment.
The State also called John Frederick Palm, a criminalist with the New Orleans Police Department, to testify at trial. The State tendered Officer Palm as an expert in the analysis and identification of narcotics, and the defense stipulated to Officer Palm's expertise. Officer Palm first identified State's Exhibit five as the crime lab report he prepared in connection with this case. Further, Officer Palm identified State's Exhibit one as the evidence analyzed in connection with his report. Officer Palm explained that in connection with the present case he was given one loose rock like substance and one plastic bag containing fourteen smaller plastic bags, each holding a rock like substance, as well as an additional plastic bag containing four smaller plastic bags containing rock like substances. Officer Palm testified that each of the rock like substances tested positive for cocaine.
Finally, the defendant called Ms. O'Dwyer Fluker to testify as a witness in his defense. Ms. Fluker testified that at the time of the incident she and the defendant were dating. Specifically, Ms. Fluker stated that she drove her car to meet the *717 defendant, who was in his vehicle, on North Miro between Bienville and Iberville streets. After meeting the defendant, Fluker then got into the defendant's car, and the two decided to take a drive out towards the lake. After turning onto Bienville, Fluker and the defendant pulled over onto Bienville to speak with a friend of the defendant's. Fluker stated that after speaking with the friend they again pulled out onto Bienville and were pulled over by the police within seconds. Fluker stated that the officers then approached the defendant's vehicle and ordered her and Fluker to exit the vehicle. Fluker testified that the officers allowed her to sit on the curb while they patted the defendant down. Fluker then noted that after finding cash on the defendant, the officers began to pepper the defendant with questions as to the origin of the cash. According to Fluker, the defendant stated that he earned the money from washing cars. However, Fluker noted that the police would not accept the defendant's explanation and continued to question the defendant.
Fluker noted that at this point the defendant became physically ill and vomited. Fluker stated that the officers then searched her but found nothing. Further, Fluker testified that the officers then started to search the defendant's vehicle. Fluker stated that after a while she heard one of the officers ask the defendant about a rock of crack cocaine on the passenger seat. Fluker noted that later one of the officers came out of the vehicle with something in his hand. Fluker testified that at no time while she was in the defendant's vehicle did she see any cocaine inside the vehicle. Moreover, Fluker testified that she never witnessed a broken dashboard or defendant trying to hide some item underneath the dashboard. On cross-examination, Fluker admitted that she did not know whether defendant had crack cocaine in the vehicle. Rather, Fluker clarified her testimony by stating that if the defendant had crack cocaine in the vehicle it was not visible to her. After Fluker left the stand, both sides rested their respective cases. Further, after closing arguments, jury instructions, and deliberation, the jury returned with a verdict finding the defendant guilty of possession of narcotics with an intent to distribute.
ERRORS PATENT
A review of the record reveals no errors patent.
ASSIGNMENT OF ERROR NUMBER 1
In his sole assignment of error, the defendant contends that the evidence was insufficient to prove beyond a reasonable doubt that he possessed cocaine with the intent to distribute. Essentially, the defendant argues that no evidence was presented to support the conclusion that the nineteen rocks of cocaine were inconsistent with personal use or that the defendant distributed or attempted to distribute the cocaine.
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4th Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court is not permitted to consider just the evidence most favorable to the prosecution but must consider the record as a whole since that is *718 what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall, Id.; Green, Id. "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." State v. Smith, 600 So.2d 1319, 1324 (La. 1992).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
Defendant was convicted of violating Louisiana Revised Statute 40:967. This statute requires that the state prove that defendant "knowingly" or "intentionally" possessed the cocaine "with intent to distribute." Specific intent to distribute may be established by proving circumstances surrounding defendant's possession which give rise to a reasonable inference of intent to distribute. State v. Dickerson, 538 So.2d 1063 (La.App. 4th Cir.1989). In State v. Hearold, 603 So.2d 731 (La.1992), the Supreme Court stated:
Intent is a condition of mind which is usually proved by evidence of circumstances from which intent may be inferred. State v. Fuller, 414 So.2d 306 (La.1982); State v. Phillips, 412 So.2d 1061 (La.1982); La.Rev.Stat. 15:445. In State v. House, 325 So.2d 222 (La.1975), this court discussed certain factors which are useful in determining whether circumstantial evidence is sufficient to prove the intent to distribute a controlled dangerous substance. These factors include (1) whether the defendant ever distributed or attempted to distribute the drug; (2) whether the drug was in a form usually associated with possession for distribution to others; (3) whether the amount of drug created an inference of an intent to distribute; (4) whether expert or other testimony established that the amount of drug found in the defendant's possession is inconsistent with personal use only; and (5) whether there was any paraphernalia, such as baggies or scales, evidencing an intent to distribute.
Hearold, 603 So.2d at 735-736.
In State v. Cushenberry, 94-1206, p. (La. App. 4 Cir. 1/31/95), 650 So.2d 783, 786, this Court explained Hearold:
In affirming defendant's conviction, we first note that the Court in Hearold refers to the factors enunciated as "useful" in determining whether circumstantial evidence is sufficient to prove intent to distribute. We do not interpret the holding in Hearold to require that the evidence fall squarely within the factors enunciated to be sufficient for the jury to find the requisite intent to distribute.
Common sense would tell a juror that the presence of the unusually large amount of cash in the defendant's car and on the *719 person of the defendant, along with the loose rock of crack cocaine and the eighteen individually wrapped plastic bags each containing a rock of crack cocaine within the defendant's vehicle were indicated of an intent to distribute. Jurors are routinely charged to use reason and common sense in order to infer material facts from circumstantial evidence. For example, see State v. Smith, XXXX-XXXX, at p. 6 (La.App. 4 Cir. 5/12/99), 744 So.2d 73, 80, wherein this Court noted that a jury could use reason and common sense to infer the constructive possession of a firearm through other facts in evidence. In State v. Jack, 97-351, p. 3 (La.App. 3 Cir. 10/8/97), 700 So.2d 1177, 1178, cited by the defendant, the court said:
No direct evidence exists to prove the requisite specific intent to distribute marijuana; thus, circumstantial evidence, consisting of inferential reasoning, can support the element of specific intent beyond a reasonable doubt. State v. Broussard, 560 So.2d 694 (La.App. 3 Cir.), writ denied, 566 So.2d 981 (La. 1990). This circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Starr, 28-934 (La.App. 2 Cir. 12/11/96); 685 So.2d 424.
Although the court in Jack, supra, did not find sufficient circumstantial evidence to support a finding beyond a reasonable doubt of the intent to distribute, the facts tending to show intent in Jack were not nearly as strong as those in the instant case. In Jack, the defendant was found in possession of only ten small bags of marijuana wrapped in one larger bag. There is no mention in Jack of the defendant being found in possession of any sum of money, nor is there any mention of the defendant being arrested in an area known for drug trafficking.
The next case cited by the defendant on this issue was State v. Green, 524 So.2d 927 (La.App. 2 Cir.1988). In Green, the defendant was found to be in possession of one or two bags containing hand rolled marijuana cigarettes along with some loose marijuana, totaling approximately one-third ounce of marijuana. There was no mention of the defendant being found in possession of any sum of cash.
Finally, the defendant cited State v. Robertson, 95-0645 (La.App. 1 Cir. 04/04/96), 672 So.2d 391. In Robertson, the defendant was found in possession of five to eight grams of crack cocaine. However, the court found it significant that the rocks of crack cocaine were all in one bag and that there were no "weapons or large sums of cash[1], items commonly seized in drug distribution arrests . . ." Id., 95-0645, p. 7, 672 So.2d at 396.
Contrasted with the foregoing cases from other circuits cited by the defendant are a number of cases from this circuit supporting the result reached by the trial court in the instant case. In State v. Bentley, XXXX-XXXX (La.App. 4 Cir. 10/21/98), 728 So.2d 405, the police observed the defendant acting suspiciously in an area of high narcotics trafficking. Before the police officers could stop and question the defendant, they observed him insert something in his mouth. After they stopped the defendant, the officers observed several white rock-like items, which were individually wrapped in plastic bags, inside the defendant's mouth. After he was restrained and placed in the back seat of the police car, the defendant spit out the contents of his mouth. Further analysis showed that the defendant had thirty-four *720 individually wrapped rocks of crack cocaine in his mouth at the time of his arrest. On appeal, the defendant challenged his conviction for possession with intent to distribute narcotics. This Court upheld the defendant's conviction and held that the jury's verdict was supported by the thirty-four individually wrapped rocks of crack cocaine found on defendant's person and the fact that he was observed by the police standing in an area known to contain a significant amount of narcotics trafficking.
In State v. Ash, 1997-2061 (La.App. 4 Cir. 2/10/99), 729 So.2d 664, several police officers were on patrol when they witnessed the defendant standing on a street corner holding his hand out to an unnamed female. When the defendant spotted the police vehicle, he walked away. Shortly thereafter, the police observed the defendant sitting on the front steps of a nearby house. When the officers stopped the police vehicle, the defendant began to run and the police officers followed on foot. Towards the end of the chase, the police witnessed defendant throw down two bags that were later shown to contain twenty-one rocks of crack cocaine and eighteen smaller bags of powdered cocaine. However, after stopping and searching the defendant the police officers found a mere thirty-six dollars on defendant's person. The jury found the defendant guilty of possession with intent to distribute narcotics. On appeal, the defendant challenged his conviction. This Court affirmed, stating:
In the present case expert testimony was unnecessary to establish that the substantial amount of cocaine found in Ash's possession was inconsistent with personal use . . . The state provided evidence of the substantial amount of cocaine found (twenty-one rocks of crack and eighteen bags of powder cocaine). The weight of the evidence is within the fact finder's discretion. We defer to the jury's determination that the amount of cocaine indicates an intent to distribute. We find no error in the jury's finding that the quantity was enough to support the intent to distribute, and therefore, this assignment has no merit.
Ash, 1997-2061, at p. 8, 729 So.2d at 669.
State v. Mamon, XXXX-XXXX (La.App. 4 Cir. 9/8/99), 743 So.2d 766, is not applicable to the facts of the instant case. In Mamon, the police were on patrol when they noticed the defendant standing outside a grocery store. When the defendant noticed the police he turned to walk into the grocery store and threw something down onto the ground before entering the store. Subsequent investigation revealed that the defendant had discarded a clear plastic bag containing fifteen smaller bags of marijuana. A jury found defendant guilty of possession with intent to distribute narcotics. This Court reversed, noting: "Thus, the State did not produce any expert testimony on quantity and/or packaging of marijuana for retail sales. Similarly, it produced no evidence on the consistency of the amount possessed with strictly personal use." Mamon, 98-1943, at p. 7, 743 So.2d at 771. However, in Mamon the defendant was found to be in possession of only thirteen dollars in cash, a sum, this Court noted, too small to make change in a narcotics transaction  in stark contrast to the $1607.00 the defendant in the instant case had with him. In Mamon, this Court noted that "[t]he possession of large sums of cash may also be considered circumstantial evidence," citing State v. Jordan, 489 So.2d 994 (La.App. 1 Cir.1986). Mamon, 98-1943, p. 7, 743 So.2d at 770.
Moreover, in the instant case there was testimony by the arresting officers that they were on patrol in the area because of the increased incidence of narcotics activity. *721 In Mamon, this Court in citing State v. Myre, 502 So.2d 1105 (La.App. 4 Cir. 1987), found this factor, a factor apparently lacking in Mamon, to be significant. Mamon, 98-1943, p. 7, 743 So.2d at 771.
Thus, in the instant case, in addition to the amount of the drugs found in the defendant's possession, the jury could consider two factors not available to the jury in Mamon: namely the large amount of cash in the defendant's possession and the high incidence of narcotics trafficking in the area.
The jury apparently concluded that the foregoing factors supported a finding that the defendant was in possession of the narcotics with an intent to distribute, a conclusion based on reasonable, common sense inferences within the province of the jury.
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Emphasis added.