McCALEB, Justice.
 

 This is a prosecution for aggravated rape. On the night of July 23, 1967 at approximately 10 p. m., the victim was parked in an automobile with her male companion at the end of Modesta Street in Baton Rouge in the vicinity of Forest Heights Subdivision. A short while after they had parked the car, the victim was attacked by two Negroes, Clarence Douglas and Robert Jackson, who approached the car from opposite sides. Jackson reached through the window on the victim’s side of the car and put a knife to her throat. As he did so, her companion, who was occupying the driver’s seat, reached for a pistol in the glove compartment but, before he was able to get it, he was struck in the head by a board wielded by Douglas, who had opened the door on the driver’s side. The blow rendered him unconscious, and he fell over onto the victim. Thereupon, Douglas and Jackson entered the
 
 *579
 
 automobile and drove it off the street into a more secluded location where the victim was pulled out of the car and told to take off her clothes. One of the Negroes was armed with the pistol which he had obtained from the glove compartment and the other was still armed with the knife. The victim then offered the men all her money if they would leave her alone. But they laughed and again told her to remove her clothes which she did. She was then thrown to the ground and raped by one of the men while the other held the pistol to her head. Afterwards, she was raped by the other, and the act was repeated at least once more by each man.
 

 Subsequently Douglas and Jackson were apprehended and indicted for aggravated rape. They were tried in due course, found guilty as charged by the jury and sentenced to death. They prosecute this appeal relying on six bills of exceptions which were reserved during the proceedings below as a basis for reversal of their convictions.
 

 Bill of Exceptions No. 1, which was taken when the court allowed the introduction in evidence of tape recordings of each defendant’s confession and also oral statements each gave to the police, is based on the following circumstances: Prior to trial counsel for Douglas
 
 [1]
 
 filed a motion for a bill of particulars in which he requested, among other things, that the State furnish him “ * * * with any statement or confession allegedly made by the defendant, Clarence Douglas, or the other defendant, Robert D. Jackson.” In answer to this request, the District Attorney replied:
 

 “No written statement was made by the accused, Clarence Douglas. The defendant Clarence Douglas did make an oral statement which was recorded on sound tape. Upon reasonable notice by the defendant, the State will make this sound tape available to defendant’s counsel at the office of the District Attorney where he may listen to and/or cause to be transcribed same.”
 

 It is to be noted that the answer of the State was silent as to a tape recording or an oral confession of the other defendant, Robert Jackson. However, we doubt that Douglas was entitled to pretrial inspection of the confession of his co-defendant, Jackson, but, if he was, his counsel should have objected to the State’s answer to the motion for a bill of particulars as being insufficient or incomplete, prior to trial. Since he failed to do so, it must be assumed that he was satisfied with the State’s answer.
 

 It further appears that neither the counsel for Douglas nor Jackson ever attempted to avail themselves of the State’s offer to
 
 *581
 
 listen to the tape recording or cause it to be transcribed. The record shows that, in compliance with Article 768 C.Cr.P., the District Attorney gave written notice, in advance of trial, of the intention of the State to introduce in evidence the oral statements of each defendant. Accordingly, during the trial Major Sliman of the Baton Rouge Sheriff’s Office testified orally as to the voluntariness and the substance of the confessions given by the defendants after they had been fully informed of their constitutional rights. Major Sliman also stated that the tape recordings of the confessions of. both defendants were not perfect and that there were “garbled” places therein. He testified, however, that he had made appropriate notations as the confessions were being given and, subsequently, had his secretary type a “transcript”, which was a combination of the words of the tape recording and his notes.
 

 At the time Major Sliman was testifying in laying the foundation for the admission of the confessions (oral and as corroborated by the tape recordings), counsel for defendants stated to the court: “ * * * we are going to admit without your Honor ruling, the statements were freely and voluntarily given.” Counsel added that their only objection to the confessions being placed before the jury was that the defendants had not been furnished a copy as requested in the bill of particulars.
 

 In this Court counsel for defendants argue that, since the court ruled that a statement taken on a recording machine is an oral statement and not a written one and since defense counsel were not permitted to hear the statements in advance of trial, reversible error has occurred.
 

 We find no merit in the bill. In the first place, although the learned trial judge may have erred in stating that counsel were not entitled to pretrial inspection of the tape recordings of the confessions because such recordings are oral statements, in view of our subsequent holding in State v. Hall, 253 La. 425, 218 So.2d 320 (1969), that a video-tape recorded confession constitutes a better record than a written confession, the comment was of no importance in this matter because the District Attorney had, in his answer to the motion for a bill of particulars filed by counsel for Douglas, offered to make the recording available to defense counsel, and he was given an opportunity to transcribe same. In view of this, counsel cannot now complain that he was not permitted to hear or transcribe the statement.
 
 [2]
 
 State v. Alleman, 218 La. 821, 51 So.2d 83.
 

 
 *583
 
 Moreover, the argument that defense counsel were entitled to oyer of the transcribed notes made by Major Sliman of the confessions orally given, in view of the fact that the recording of the statements was “garbled” in several places, is not well founded. This is because the transcribed notes of Major Sliman were the officer’s recollection of the oral confessions. They were not documentary evidence or in the same category as documentary evidence. See State v. Manuel, 253 La. 195, 217 So. 2d 369 (1968); State v. Brumfield, 254 La. 999, 229 So.2d 76 (1969); and State v. Alexander, 255 La. 941, 233 So.2d 891 (1970).
 

 Bill No. 2 was taken when the trial judge refused to give three special charges to the jury submitted by defense counsel. Special Charge No. 1 reads:
 

 “To constitute the crime of aggravated rape it is necessary that the woman resist to the utmost until she is either overcome by superior strength or compelled to stop resisting before the actual rape is committed by threats of great and immediate bodily harm accompanied by apparent power of execution.”
 

 This charge was properly refused under Article 807 C.Cr.P., for it required explanation and is not a wholly correct statement of the law. The charge implies that, in order to constitute the crime of aggravated rape, the victim must from the outset in all cases offer physical resistance to the utmost of her abilities and must continue her resistance until she is prevented by physical force or threats of great and immediate bodily harm accompanied by apparent power of execution. R.S. 14:42(2) declares that aggravated rape is committed where the female is prevented from resisting the act by threats of great and immediate bodily harm accompanied by apparent power of execution. This envisions that the victim does not have to physically resist when she is prevented from resisting by her assailant where his actions are tantamount to threats which place her in fear of great bodily harm accompanied by apparent power of execution.
 

 Special Charge No. 2 sets forth:
 

 “Unless you are convinced beyond a reasonable doubt by the evidence
 
 * *
 
 * that the woman did actually resist, to the utmost, or there were threats of great and immediate bodily harm, which caused her to believe that she was in immediate danger, it is your duty to bring in a verdict of ‘not guilty’ of aggravated rape.”
 

 
 *585
 
 While we think this charge would require some explanation, it suffices to say that it was properly refused because it was substantially included in the general charge given by the judge.
 

 The same is true of Special Charge No. 3, which reads:
 

 “The fact that the prosecuting witness could have conceivably been afraid, and in spite of the fact that the defendants may have had the power of execution, unless threats were actually made causing her to fear for her life or great bodily injury, aggravated rape was
 
 not
 
 committed.”
 

 Similarly, defense counsel were here attempting to have the jury instructed that aggravated rape could not be committed unless there was verbal or other specific communication of threats by the assailant to the victim, and the requested charge would imply that threats communicated by gestures or motions do not fall within the purview of Article 42 of our Criminal Code. This, of course, is not the law for the threats need not be made verbally or through the exhibition of a dangerous weapon; they may be expressed or implied by the man’s conduct toward the female, provided she is placed in such fear by the array of physical force that she dares not resist. See 75 C.J.S. Verbo Rape, Sec. 15, p. 482, and authorities cited.
 

 Bill of Exceptions No. 3 was taken to an alleged statement by the judge in his general charge, which counsel proclaim was a direct comment on the evidence and, therefore, violative of Article 806 C.Cr.P. It is asserted in the bill of exceptions that the judge stated in his general charge it was not necessary for the defendant to have made an oral threat; “The fact that they had a gun or knife and pointed it at the victim was sufficient to constitute a threat under the law.” And it is further asserted in the bill that the judge declared in his charge that, if the prosecutrix was threatened and thought her life was in danger (evidently with regard to reporting the crime to the police), she was relieved from the presumption that her failure to report the crime would create doubt as to her consent or lack of consent.
 

 These contentions are not tenable. Initially, an examination of the general charge of the judge does not support the assertion contained in the bill of exceptions that the judge stated, “The fact that they had a gun or a knife and pointed it at the victim was sufficient to constitute a threat under the law.”
 
 [3]
 
 Indeed, an examination of the lengthy and comprehensive general charge of the judge does not reveal that he corn-
 
 *587
 
 merited on the facts of the case in any respect. On the contrary, all statements made therein were illustrative in nature and were without reference to the specific evidence involved.
 

 The other complaint alleged to be a comment on the evidence is likewise groundless, for the judge did not say that if the prosecutrix was threatened or thought her life was in danger, her failure to immediately report the incident would not cause or create any doubt as to her consent or lack of consent. The judge properly stated that
 
 if the fury believed from the evidence
 
 that the prosecutrix did not complain, because of threats by the accused that she would suffer great bodily harm if she reported the matter immediately, “ * * then this fact would excuse her from communicating the knowledge of such act of rape to others.”
 

 After the trial the defendants filed two motions for new trials. In the first motion, which forms the basis of Bill of Exceptions No. 4, it was alleged that a review of the evidence would show that one of the elements required for the crime of aggravated rape had not been proven as the prosecutrix did not resist to the utmost, and her resistance was not overcome by force nor was she threatened with great and immediate bodily harm with apparent power of execution as prescribed by Article 42(2) of the Criminal Code. Counsel argue under this bill that there was no evidence that the prosecutrix resisted at all; that, on the contrary, there was evidence that she did not resist and there were no threats after the sexual intercourse.
 

 We find no merit whatever in this bill. A reading of the testimony of the victim and, indeed, the statement of the salient facts of the case which we have condensed at the beginning of this opinion, clearly reveal that the contentions made in support of the motion for new trial are in reality an argument on the facts. For it is shown, from the initial assault by the defendants on the victim and her companion, the former was assaulted by her assailants armed with deadly weapons and constantly thereafter put in fear of bodily harm by an array of physical force which overpowered her to the extent that she dared not resist. Furthermore, the evidence shows that she was told by one of the defendants after the rapings that, if she reported the crime, “ * * * part of my family would never wake up”, and, having a young daughter she was reluctant to report the offense until she made sure of the child’s safety. The delay in reporting the crime was reasonable under the circumstances and, in any case, whatever effect it might have had on the outcome was purely a question of fact for determination by the jury. This Court is without authority to review such questions on appeal. It is only when there is no evidence at all to
 
 *589
 
 sustain the conviction that we may entertain such a contention.
 

 Bill of Exceptions No. 5 was purportedly taken by defendant, Robert Jackson, to the trial court’s action in admitting his oral confession and the tape recording thereof in evidence on the ground that he was not fully advised of his constitutional rights.
 

 This bill has been abandoned. Counsel for Jackson admitted during oral argument in this Court that no such objection as alleged in the bill was made during the trial. On the contrary, as we have previously stated in this opinion, the record shows counsel for defendants acknowledged, while the State was laying the foundation for the admission of the confessions in evidence, that the statements were freely and voluntarily given and that all the constitutional rights of the accused “ * * * were accorded them * *
 

 In a final effort to obtain a new trial for defendants, their industrious counsel filed a second motion for a new trial claiming that the manner in which the jury was selected in the case was violative of defendants’ constitutional rights under Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776. Counsel specify there were eight prospective jurors excused from service on challenges for cause simply because they stated they did not believe in capital punishment.
 

 It appears from the record that, of the thirty-eight prospective jurors called, ten were excused for cause based upon their conscientious or religious scruples against the infliction of capital punishment. The voir dire examination by the district attorney and the painstaking inquiries and statements of the trial judge disclose that these jurors were not summarily dismissed from service solely because they expressed scruples against the infliction of capital punishment. Each prospective juror when called was closely, and usually at some length, questioned by the State and then the judge, who invariably informed them of their option to return a capital verdict or one without capital punishment in the event the evidence established defendants’ guilt beyond a reasonable doubt.
 
 [4]
 
 And in no instance do we find any of the jurors was excused summarily on his statement that he did not believe in capital punishment. On the contrary, a reading of the voir dire examination of each of the jurors who were excused for cause shows beyond any question that he would have automatically voted against the imposition of capital punishment without regard to the evidence and
 
 *591
 
 that his attitude toward the death penalty was such as to prevent him from making an impartial decision in the case. For example, the juror, George W. Rush, after stating that he entertained conscientious scruples against infliction of capital punishment, was asked:
 

 “Q. Does that mean there is no situation in which you could, as a jury member, return a verdict which carried capital punishment?
 

 “Mr. Rush: ‘That’s right.’ ”
 

 When the prospective juror was challenged for cause, the court questioned him whether this was a matter of conscience and, after replying in the affirmative, the juror was excused. To the same effect is the examination of Mr. Nicholas Parrino who, after stating his opposition to capital punishment, was asked whether that meant that,
 
 “
 
 * * * there is no situation in which you could, as a jury member, return a verdict which carried the death penalty?”, to which the juror replied: “That’s right.”
 

 Accordingly, we hold counsel’s contention that the selection of the jury was violative of defendants’ constitutional rights under the Witherspoon decision is not tenable.
 

 For the reasons assigned, the convictions and sentences are affirmed.
 

 SANDERS, J., did not participate.
 

 [1]
 

 . He was appointed by the court to represent Douglas. Jackson had retained his own counsel.
 

 [2]
 

 . We also observe that it is not procedurally proper to request oyer of the State’s evidence in a motion for a bill of particulars. The sole function of a bill of
 
 *583
 
 particulars is to inform the accused in greater detail of the nature of the crime of which he is charged, State v. Simpson, 216 La. 212. 43 So.2d 585; and State v. Bourg, 248 La. 844, 182 So.2d 510.
 

 [3]
 

 . The bills of exceptions in this case were signed by a judge who did not preside at the trial as the trial judge died on June 11, 1969, prior to the time the bills were presented for signature (September 5, 1969).
 

 [4]
 

 . At the time of the trial, the Witherspoon ease was pending before the United States Supreme Court. The trial judge was aware of this and, hence, questioned the prospective jurors at length respecting their convictions and beliefs as to capital punishment. The Witherspoon case was decided after the jury had returned its verdict and while this case was still pending below.