766 So.2d 634 (2000)
STATE of Louisiana, Appellee,
v.
Billy Ray STEVENS, Appellant.
No. 33,700-KA.
Court of Appeal of Louisiana, Second Circuit.
August 23, 2000.
*636 Louisiana Appellate Project by Carey J. Ellis, III, Indigent Defender Office by Frank V. Zaccaria, Jr., Counsel for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Traci A. Moore, Assistant District Attorney, Counsel for Appellee.
Before NORRIS, C.J., and PEATROSS and DREW, JJ.
NORRIS, Chief Judge.
Following a jury trial, the defendant, Billy Ray Stevens, was convicted of one count of aggravated rape, a violation of La. R.S. 14:42, and was sentenced to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. Stevens appeals, challenging the sufficiency of the evidence against him as well as urging that the district court imposed an unduly harsh and excessive sentence which also failed to sufficiently articulate and consider the La.C.Cr.P. art. 894.1 guidelines. For the reasons expressed herein, we affirm.

Factual Background
On the morning of April 4, 1997, 13-year-old K.M. was alone at her Shreveport home getting ready for school. Before she left to catch her school bus, she heard a jingling sound at the door. Assuming that it was her stepfather at the door, she did not think this unusual. Later, she stepped from her room into the hall to discover Stevens standing in the living room. Although she did not know Stevens' name at that time, she had seen him before in her neighborhood when she walked to her bus stop in the mornings; specifically, two days earlier, as she was leaving her house to catch the school bus, Stevens approached her, told her "good morning" and said she looked nice. When K.M. reached her bus stop, she noticed that Stevens was still standing in the bushes next to her house.
When Stevens began to walk toward K.M., she screamed; Stevens pushed her into her room and told her to stop screaming. Stevens then grabbed her around her neck and wrestled with her to prevent her from escaping. K.M. explained that the defendant "clothes-lined" her with his arm and hit her as she attempted to escape.
K.M. testified that Stevens grabbed her around the throat to make her stop screaming, telling her that if she did not shut up, he would kill her. K.M. thought that Stevens might have a gun in his coat, although she did not see one. K.M. stopped screaming and Stevens pushed her onto her bed.
Now fearing that Stevens was going to rape her, K.M. asked him if she could go to her brother's room to get a condom because she was planning to use this opportunity to try to escape. Stevens then told her that they were not going to use a condom.
Ultimately, K.M. feared for her life, so she did whatever he told her to do. K.M. took off her clothes when Stevens told her to and got back on the bed. As she was disrobing, she did not attempt to escape because Stevens was blocking her. When she hesitated, Stevens screamed at her to hurry. Stevens had taken off his pants. K.M. was unable to see if the Stevens' penis was erect at the time because of the size of his stomach.
While K.M. was on the bed, Stevens told her to open her legs, but she refused. She screamed and told him that she was a virgin. Stevens told her that if she did not stop screaming, he would put his penis in her mouth. Stevens then grabbed her *637 legs and "jammed" two of his fingers into her vagina as she screamed. K.M. testified that this was very painful because she had never done anything like it before. Stevens then told K.M. to put his penis in her vagina, but K.M. told him that she did not know what to do. Stevens again told her to do it. When K.M. told him for a second time that she did not know how, he finally put his penis in her vagina; K.M. described this act as very painful. Stevens talked to K.M. while he raped her, asking her what her name was and how old she was; K.M. answered Stevens' questions because she was nervous. Stevens then told K.M. that he had been with her mother in their house and that it was good. K.M. cried and screamed as Stevens talked to her. K.M. had never seen Stevens in her house before this incident, nor had she ever seen him talk to her mother.
K.M. testified that Stevens was on top of her and that he had a very "horrified" smell. Stevens held her down with his hands, and she testified that to the best of her knowledge she saw both of his hands at that time. K.M. further testified that Stevens kept trying to kiss her and finally made her kiss him when he positioned her so that she could not move her head. According to K.M., the kiss had a very nasty feeling because his breath was terrible and that he did not have any teeth. K.M. testified that she felt an emission or wetness at the conclusion of the rape, which lasted three to five minutes. After Stevens was finished, he got up, pulled up his pants, and told K.M. to get dressed and catch her school bus. When it became apparent that she had missed her bus, Stevens then told her to call her aunt to take her to school. K.M. was very surprised that the defendant knew her aunt took her to school when she missed her bus.
Stevens told K.M. that if she told anybody what had happened, he would kill her. He also told her that he would return later and they would do it again. K.M. was hurt and scared of Stevens and was worried that he would return before she was able to leave. When Stevens finally left, K.M. locked up the house and attempted to call her mother at work; she was unable to reach her mother, but did talk to her mother's supervisor, informing him that she had been raped. K.M. then called her grandmother and told her that she had been raped. K.M.'s grandfather and aunt came and picked her up and took her to her grandmother's house where she met her mother. The police were called and an ambulance took K.M. to the hospital.
As a result of the incident, K.M. had a swollen lip and marks inside her mouth from her braces. K.M. explained that the marks were the result of Stevens wrestling with her and hitting her. K.M. also had a several finger marks where Stevens attempted to choke her. K.M. also testified that when she was at the hospital, she saw something in her panties which was not there when she dressed that morning but had apparently stained them after she got dressed after the rape. She had not washed herself before she was examined at the hospital.
Dr. Perry Scott Barrilleaux of the LSU Medical Center performed a sexual assault exam on K.M. He observed that K.M. had what appeared to be a small laceration on one side of her labia. He further observed that K.M. had small hash marks inside her vagina. Detective Clarence Wray, Jr., an investigator with the Shreveport Police Department, received the sexual assault kit performed on K.M. and some of her clothing. Wray brought the received items to the North Louisiana Crime Lab for further analysis.
Connie Lee Brown, a forensic DNA analyst at the North Louisiana Crime Lab who was stipulated at trial as an expert in DNA analysis, determined that the DNA of the semen found in KM's panties was consistent with the genetic markers found in the reference saliva stain of the defendant. Brown found that the possibility that another black individual could have *638 this combination of genetic markers was approximately one in 84 quadrillion. On cross-examination, however, Brown admitted that no spermatozoa were detected on the vaginal swab which was collected as part of the rape kit.
At trial, K.M. testified that on the day of the rape, Stevens was wearing the black pants, black shirt, jacket, and ski cap that he wore every day. At trial, K.M. identified the clothing Stevens wore on the day of the rape. On cross-examination, K.M. testified that although Stevens did not pull a gun or knife on her or threaten her with any other weapon, she assumed that Stevens had a gun because he asked her whether she wanted him to "blow her brains out" and that she could not see into his jacket. Once Stevens pushed her into her room, she was unable to grab anything in an effort to protect herself.
Fannie Cawthorne, a neighbor of K.M., testified that Stevens lived down the street from her and used to cut her yard. Cawthorne further testified that she had known the defendant for at least 15 years. Cawthorne testified that one week in April 1997, she saw Stevens standing near K.M.'s house on Tuesday, Wednesday, and Thursday between 6:30 and 7:30 a.m. According to Cawthorne, Stevens was looking over the bushes at K.M.'s house. Cawthorne did not see Stevens on the morning of the rape, however, for it was raining that morning and she ran to her car without noticing anything.
Curley Jamerson, another of K.M.'s neighbors, testified that he saw Stevens standing in the street at around 7:00 a.m. on the morning of the rape. Jamerson testified that he had also seen Stevens walking up and down the street and standing in the street prior to this day.

DiscussionSufficiency of the Evidence
Initially, Stevens contends that the evidence presented at trial was insufficient to support the jury verdict of aggravated rape in that the state failed to prove the necessary element of penetration. He contends that the state failed to present conclusive medical or physical evidence to prove beyond a reasonable doubt that he penetrated the victim and that K.M. herself was unable to accurately testify as to whether she was actually sexually penetrated.
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
Under Jackson v. Virginia, supra, the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992).
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of the evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude *639 beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La. App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, supra; State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (1987). Accordingly, our role is not to assess credibility or reweigh evidence. State v. Robertson, 96-1048 (La.10/04/96), 680 So.2d 1165; State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Gradick, 29,231 (La.App.2d Cir. 1/22/97), 687 So.2d 1071; State v. White, 28,095 (La.App.2d Cir.5/8/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760.
La. R.S. 14:42(A)(1) and (2) defines aggravated rape as follows:
Aggravated rape is a rape committed... where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
When the victim resists the act to the utmost, but whose resistance is overcome by force.
When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
La. R.S. 14:41 defines rape as follows:
A. Rape is the act of anal or vaginal sexual intercourse with a male or female person committed without the person's lawful consent.
B. Emission is not necessary and any sexual penetration, vaginal or anal, however slight is sufficient to complete the crime.
The testimony of the victim alone is sufficient to prove the elements of the offense. State v. Ingram, 29,172 (La. App.2d Cir.1/24/97), 688 So.2d 657, writ denied, 97-0566 (La.9/5/97), 700 So.2d 505; State v. Walters, 26,888 (La.App.2d Cir.5/10/95), 655 So.2d 680. Violation of La. R.S. 14:41 occurs when there is any penetration, however slight, of the aperture of the female genitalia, even its external features. State v. Lewis, 577 So.2d 799 (La.App. 2d Cir.), writ denied, 582 So.2d 1304 (La.1991).
Stevens urges that since the state failed to prove the necessary element of sexual penetration beyond a reasonable doubt the only possible verdict was sexual battery. La. R.S. 14:43.1(A)(1) defines sexual battery as follows:
Sexual battery is the intentional engaging in any of the following acts with another person, who is not the spouse of the offender, where the offender acts without the consent of the victim, or where the other person has not yet attained fifteen years of age and is at least three years younger than the offender: The touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender ...
The victim, K.M., testified that Stevens held her with his hands as he put his penis into her vagina and had sexual intercourse with her. K.M. further testified that to the best of her knowledge, she saw both of his hands at the time. The jury apparently found K.M.'s testimony credible. While *640 K.M. candidly admitted that she was not sexually experienced, she could obviously perceive that she had been penetrated. Since the testimony of the victim of a sex offense, if believed by the trier of fact, is sufficient to prove the elements of the offense, K.M's testimony sufficed to establish that defendant penetrated her.
In the alternative, Stevens urges that the evidence submitted was only sufficient to prove forcible rape, not aggravated rape. La. R.S. 14:42.1 A(1) defines forcible rape as follows:
Forcible rape is rape committed when the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
When the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.
In State v. Howard, 31,807 (La.App.2d Cir.8/18/99), 746 So.2d 49, this court addressed the difference between aggravated rape and forcible rape:
The distinction between aggravated and forcible rape has been addressed by our supreme court in State v. Parish, 405 So.2d 1080 (La.1981). The Parish court determined that the legal definition of aggravated rape as defined in LSA-R.S. 14:42(2) is virtually identical to the definition of forcible rape because there is no essential difference between the specific results required by each crime definition. Both require that the victim be prevented from resisting the act by threat of great harm under circumstances where the victim reasonably believes that resistance would be futile. Forcible rape is merely a lesser degree of the crime of aggravated rape and is a responsive verdict to that crime. The only distinction between aggravated and forcible rape is the degree of force employed and the extent to which the victim resists. However, the jury is authorized to subject a guilty defendant to more severe punishment by convicting him of aggravated rape rather than forcible rape. The court then went on to conclude that it was the legislative aim to divide the continuum of acts of coerced sexual intercourse into two categories, thereby assigning to the fact finder the function of fixing the range of permissible punishment for convicted offenders by returning a verdict which appropriately fits the crime and the degree of force employed. Finally, the court held that the proper standard of appellate review in these type of cases is:
... whether any reasonable jury ..., viewing all of the evidence, in the light most favorable to the prosecution could find beyond a reasonable doubt that the defendant ... [caused] the results required by both the aggravated and forcible rape statutes and that the degree of force employed warranted punishment in the greater, rather than lesser, degree... [405 So.2d at 1087] [Bracketed material added.]
Stevens argues that although the victim, K.M, testified that she was overcome by him, the force was not of the degree necessary for an aggravated rape, as although she resisted, she did not resist to her utmost.
The evidence in this record supports a determination that when Stevens raped K.M., she was prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution. La. R.S. 14:42 A(2) "envisions that the victim does not have to physically resist when she is prevented from resisting by her assailant where his actions are tantamount to threats which place her in fear of great bodily harm accompanied by apparent power of execution." State v. Douglas, 256 La. 572, 584, 237 So.2d 382, 386 (1970), vacated as to death sentence, 408 U.S. 937, *641 92 S.Ct. 2864, 33 L.Ed.2d 756 (1972), on remand, 263 La. 294, 268 So.2d 231 (1972). The "threats" described in § 42 A(2) need not be made verbally or through the exhibition of a dangerous weapon; they may be express or implied by the offender's conduct toward the victim, "provided she is placed in such fear by the array of physical force that she dares not resist." Id. at 585-86, 237 So.2d at 386-87.
K.M.'s testimony established that Stevens pushed her, grabbed her around the neck area, wrestled with her, "clothes-lined" her, and hit her as she attempted to escape. Stevens also threatened to kill her and asked her if she wanted him to blow her brains out; as such, Stevens' actions were clearly tantamount to threats placing K.M. in fear of great bodily harm accompanied by apparent power of execution. Had K.M. resisted Stevens, she had every reason to believe that he would physically abuse her. In addition, Stevens was much older and physically larger than 13-year-old K.M.
The evidence before the jury was sufficient to convict Stevens of aggravated rape. This assignment of error is without merit.

Excessive Sentence
Stevens next contends that in his case, the statutorily mandated sentence of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence is unconstitutionally excessive.
La. R.S. 14:42 D(1) provides that "[w]hoever commits the crime of aggravated rape shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence." Thus, the trial court was statutorily mandated to sentence the defendant to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
He also urges that La.C.Cr.P. art. 894.1 C requires the trial court to state for the record the considerations taken into account and the factual basis for the sentence imposed. The defendant argues that the record is void of any aggravating or mitigating factors. The defendant contends that because the trial court did not articulate the factual basis for his sentence, it should be vacated and this matter remanded to the trial court for re-sentencing in compliance with La.C.Cr.P. art. 894.1.
We note as a threshold matter that Stevens did not file a motion to reconsider sentence in the trial court. Accordingly, he is precluded from presenting this argument which was not presented to the trial court; he is simply relegated to having this court consider the bare claim of constitutional excessiveness. La.C.Cr.P. art. 881.1; State v. Mims, 619 So.2d 1059 (La.1993); State v. Duncan, 30,453 (La. App.2d Cir.2/25/98), 707 So.2d 164.
Nevertheless, a recitation of art. 894.1 factors is not necessary to impose a statutorily mandated sentence. State v. Koon, 31,177 (La.App.2d Cir.2/24/99), 730 So.2d 503; State v. Rose, 606 So.2d 845 (La.App. 2d Cir.1992).

Constitutional Excessiveness
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985).
Although a trial court has the authority to reduce a mandatory minimum sentence, State v. Dorthey, supra, this power should be exercised only when the court is clearly and firmly convinced that the minimum sentence is excessive. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d *642 672, 676. In fact, the sentencing court may deviate downward only when it finds that the mandatory minimum makes no measurable contribution to acceptable goals of punishment, or is nothing more than purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime. State v. Dorthey, supra. The defendant bears the burden of showing that a deviation beneath the mandatory minimum is warranted. State v. Johnson, supra.
In the present case, Stevens has not shown that his sentence is excessive or that he is the "exceptional defendant" who deserves otherwise. State v. Johnson, supra. The circumstances of this offense were serious; Stevens used physical force and threats to rape a 13-year-old girl whom he stalked for days prior to his crime. Based on our careful review of the entire record, this court finds that Stevens' sentence is not cruel, unusual or excessive, nor does it shock our sense of justice.
This assignment of error is without merit.

Conclusion
We have reviewed the entire record and find nothing we consider to be error patent. La.C.Cr.P. art. 920(2). For the reasons expressed above, Steven's conviction and sentence are AFFIRMED.
AFFIRMED.