Judgment rendered November 29, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,361-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

DERION JAMISON                              Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 378,598

Honorable Christopher T. Victory, Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By: Sherry Watters

JAMES E. STEWART, SR.                  Counsel for Appellee
District Attorney

BRITTANY B. ARVIE
TOMMY JAN JOHNSON
KODIE K. SMITH
Assistant District Attorneys

* * * * *

Before STONE, COX, and THOMPSON, JJ.

**STONE, J.**

This criminal appeal arises from the First Judicial District Court, the Honorable Chris Victory, presiding. A unanimous jury found the appellant-defendant, Derion Jamison ("defendant"), guilty of: (1) second degree murder in violation of La. R.S. 14:30.1, for which he received a sentence of life imprisonment at hard labor subject to parole eligibility pursuant to La. R.S. 15:574.4; (2) attempted second degree murder in violation of La. R.S. 14:27 and La. R.S. 14:30.1, for which he received a sentence of fifty years at hard labor without benefits; and (3) aggravated assault with a firearm in violation of La. R.S. 14:37.4, for which he received a sentence of ten years at hard labor, and a $5,000 fine plus court costs. The sentences were ordered to be served consecutively. The defendant now appeals his sentences.

## FACTS AND PROCEDURAL HISTORY

In July 2019, the Collins family and some friends traveled from Rayville, Louisiana, to Shreveport to enjoy a short vacation and visit Splash Kingdom. The Collins family included Ha'Shoun Collins ("Ha'Shoun"), Alajah Collins ("Alajah"), Quantarius Collins ("Quantarius"), and friends included Traveon Webster ("Traveon"), Jayla Boley ("Jayla"), and Alexis Hanks ("Alexis").[1] The Collins family and friends stayed at the Country Inn & Suites and an adjoining hotel. The defendant and his friends were also staying at the Country Inn & Suites. The two groups did not know each other.

---

[1] This group of individuals will be collectively referred to as the "Collins family and friends". Alajah Collins is Ha'Shoun Collins' brother and Quantarius Collins is a cousin.

Around 11:00 p.m. on July 18, 2019, Traveon and Alajah returned to the Country Inn & Suites after spending the day with other family members (who also traveled from Rayville). Shortly thereafter, Traveon and Alajah made contact with some females from the defendant's group near an elevator. Alajah commented to one of the women that he was "trained to go." The defendant approached Traveon and Alajah and asked Alajah what he meant by that phrase. Alajah told the defendant that he knew what he meant.[2] The defendant nodded, said "okay," and got on an elevator with the woman to whom Alajah's comment was made. Although neither party made any threats at the time, Traveon stopped Alajah from getting on the elevator with the defendant because of the "energy."

At approximately 1:00 a.m., the Collins family and friends were gathered in the parking lot of the Country Inn & Suites near their vehicles, talking. The defendant and his friends were also gathered outside the hotel by the front entrance. Traveon described the defendant's demeanor as that of a "guard dog" and that the defendant was watching his group as if they were a threat to him. At this time, Ha'Shoun noticed that the defendant was "mugging" them as if they had done something to him. Ha'Shoun and Traveon decided to speak with the defendant to explain that they were not looking for trouble. Ha'Shoun, Traveon, and Alajah were not armed with weapons, and no one raised their voice during this exchange. Afterward, all parties shook hands. As Ha'Shoun, Traveon, and Alajah began to walk away, the defendant said, "don't think y'all checking anything." Ha'Shoun, Traveon, and Alajah turned around, and Ha'Shoun made a comment to the

---

[2] At trial, Alajah explained that he was suggesting that the woman have sex with him.

defendant.[3]  At this point, Quantarius, who had been sitting in the back of his truck, started walking toward the defendant, Ha'Shoun, Traveon, and Alajah.[4]  The defendant then pulled out a gun and fired several shots, mortally wounding Ha'Shoun, and injuring Traveon in the stomach and Quantarius in the leg.  The defendant then fled the scene with other individuals in his group.  The suspects were unknown at the start of this investigation.[5]

On August 5, 2020, Corporal John Scheen ("Cpl. Scheen") was involved in a high-speed chase with a white Nissan Altima.  Cpl. Scheen terminated the pursuit because it became a threat to public safety.  Moments later, the pursuit vehicle crashed, and the driver and a passenger fled the scene.  At the location of the crash, Cpl. Scheen recovered shoes, a ski mask, two black cellphones, and two .9mm pistols.  Test firings from one of the guns found at the car crash matched the shell casings found at the scene of the shooting at the Country Inn & Suites one year earlier.  The vehicle owner, Shakina Fields ("Ms. Fields"), testified that on the day of the crash, the defendant was driving her car and refused to return it to her.[6]  As a result of the crash, the defendant became a suspect in the death of Ha'Shoun and the injuries to Traveon and Quantarius.  After obtaining the defendant's Facebook information from Ms. Fields, the detective on the case prepared

---

[3] Here, the testimony differs as to what Ha'Shoun said to the defendant.  Traveon testified that they told the defendant "it wasn't like that and that they were not here for that."  Alajah and Quantarius testified that Ha'Shoun responded to the defendant and said "I'm about my business."

[4] At trial, Alajah testified that when Quantarius jumped from the back of his truck, he made the comment "are we going to fight?"

[5] The surveillance cameras at the hotel were not working.

[6] At trial, Shakina Fields testified that the defendant was her "baby daddy's son."

photographic line-ups wherein several witnesses identified the defendant.[7] Subsequently, the defendant was indicted on one count of second degree murder and two counts of attempted second degree murder. At the time of the offense, the defendant was seventeen years old.[8]

After the trial, the jury found the defendant guilty of second degree murder, attempted second degree murder, and aggravated assault with a firearm. At sentencing, the only mitigating evidence submitted to the court was the defendant's age. The defendant was offered the opportunity to speak before sentencing but declined by stating that he had "nothing to say." No presentence investigation ("PSI") report was ordered by the court. Also, during sentencing, the trial court used the following La. C. Cr. P. art. 894.1 factors to support the sentence: (1) the offender knowingly created a risk of death or great bodily harm to more than one person; (2) the offender used threats of or actual violence in the commission of the offense; (3) the offense resulted in a significant permanent injury or significant economic loss to the victim or his family; (4) the offender used a dangerous weapon in the commission of the offense; (5) the offender foreseeably endangered human life by discharging a firearm during the commission of an offense which has, as an element, the use of physical force against the person of another; and (6) the offender used a firearm or other dangerous weapon while committing or attempting to commit an offense which has, as an element, the use of physical force against the person of another.

---

[7] Ms. Fields identified the defendant as the individual who was driving her white Nissan Altima the day of the accident. Quantarius, Alajah, Jayla, and Traveon identified the defendant as being the shooter at the Country Inn & Suites.

[8] The defendant was born on June 2, 2003.

A hardship hearing was not held regarding the $5,000 fine. As a result, the aforementioned sentence was imposed.

On October 10, 2022, counsel for the defendant filed a motion to reconsider sentence, arguing that: (1) despite the trial court's express recognition of parole eligibility under La. R.S. 15:574.4, the trial court incorrectly sentenced him to life without benefits; and (2) that sentencing him to consecutive sentences of life without parole, fifty years without parole, and ten years is both excessive in violation of the Eighth Amendment's prohibition of cruel and unusual punishment. The trial court denied the motion to reconsider.

The defendant now appeals his sentence, arguing the following assignments of error: (1) his life sentence contravenes La. R.S. 15:574.4, *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455 (2012); (2) his 50-year sentence violates *State ex rel. Morgan v. State*, 15-0100 (La. 10/19/16), 217 So. 3d 266; (3) whether the trial court imposed an excessive sentence by sentencing him to maximum consecutive sentences; and (4) whether the trial court erred in imposing a $5,000 fine and court costs without conducting the mandatory hearing per La. C. Cr. P. art. 875.1.

For the following reasons, we affirm the defendant's convictions and sentences imposed for second degree murder and attempted second degree murder. While we affirm the defendant's conviction for aggravated assault with a firearm, we vacate the portion of the sentence imposing a $5,000 fine.

### DISCUSSION

*La. R.S. 15:574.4 and Miller v. Alabama*

The defendant interprets his life sentence as not being subject to La. R.S. 15:574.4(F). However, his interpretation is incorrect. After stating that

the defendant would be sentenced to life without parole in accordance with the explicit mandate of La. R.S. 14:30.1, the trial court modified its initial statement of the sentence by clarifying that the defendant is parole eligible "to the extent the defendant complies and qualifies with the conditions enumerated in of La. R.S. 15:574.4(F)." While the trial court could have been more artful, the trial court's pronouncement of sentence is sufficient to indicate parole eligibility under La. R.S. 15:574.4(F), and thus, the requirements of *Miller* are satisfied.

The defendant further argues that his sentence of fifty years without benefits is contrary to *Morgan*, *supra* because it denies him a "meaningful opportunity for release."[9] However, the instant case is distinguishable from *Morgan.* In *Morgan*, the defendant was convicted of a single offense and sentenced to a term of 99 years without possibility of parole. Here, the defendant was convicted of three offenses, resulting in three consecutive sentences. The facts of *Morgan* are not authoritative in this case and, thus, are not applicable.

*Excessive Sentence*

In his second assignment of error, the defendant contends that his consecutive sentences are excessive and violative of the Eighth Amendment's prohibition against cruel and unusual punishment. The defendant also argues that the record does not support the trial court's imposition of maximum sentences, as the district court failed to consider

---

[9] The defendant, in brief, has much to say about La. R.S. 15:574.4(J). However, he concedes, La. R.S. 15:574.4(J) is inapplicable because it was enacted after he committed these crimes.

mitigating circumstances and lesser sentences as required by *State v. Dorthey*, 623 So. 2d 1276 (La. 1993).

La. C. Cr. P. art. 881.1(E) precludes a defendant from presenting sentencing arguments to the court of appeal which were not previously presented to the trial court. During his motion to reconsider sentence, the defendant failed to argue that the trial court did not articulate factors that support the imposition of maximum sentences. Therefore, we hold that the defendant waived his entitlement to review this issue. *State v. Stevens*, 33,700 (La. App. 2 Cir. 8/23/00), 766 So. 2d 634. However, we will review defendant's constitutional excessiveness challenge regarding his consecutive sentences.

The Eight Amendment of the United States Constitution and Article I, § 20, of the Louisiana Constitution prohibits the imposition of cruel or excessive punishment. Although a sentence falls within statutory limits, it may be excessive. *State v. Sepulvado*, 367 So.2d 762 (La. 1979). An appellate court utilizes a two-prong test in reviewing a sentence for excessiveness. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the article's guidelines. *State v. Smith*, 433 So. 2d 688 (La. 1983); *State v. West*, 53,526 (La. App. 2 Cir. 6/24/20), 297 So. 3d 1081; *State v. Sandifer*, 53,276 (La. App. 2 Cir. 1/15/20), 289 So. 3d 212; *State v. DeBerry*, 50,501 (La. App. 2 Cir. 4/13/16), 194 So. 3d 657, *writ denied*, 16-0959 (La. 5/1/17), 219 So. 3d 332. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where

the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. *State v. Lanclos*, 419 So. 2d 475 (La. 1982); *State v. Lee*, 53,461 (La. App. 2 Cir. 4/22/20), 293 So. 3d 1270, *writ denied*, 20-00582 (La. 10/14/20), 302 So. 3d 1113; *State v. Payne*, 52,310 (La. App. 2 Cir. 1/16/19), 262 So. 3d 498; *State v. DeBerry*, *supra*. The trial court is in the best position to consider a particular case's aggravating and mitigating circumstances and, therefore, is given broad discretion in sentencing. *State v. Cook*, 95-2784 (La. 5/31/96), 674 So. 2d 957, *cert. denied*, 519 U.S. 1043, 117 S. Ct. 615, 136 L. Ed. 2d 539 (1996); *State v. West*, *supra*; *State v. Valadez*, 52,162 (La. App. 2 Cir. 8/15/18), 251 So. 3d 1273; *State v. Jackson*, 51,575 (La. App. 2 Cir. 9/27/17), 244 So. 3d 764; *State v. Allen*, 49,642 (La. App. 2 Cir. 2/26/15), 162 So. 3d 519, *writ denied*, 15-0608 (La. 1/25/16), 184 So. 3d 1289. The important elements that should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. *State v. Jones*, 398 So. 2d 1049 (La. 1981); *State v. DeBerry*, *supra*. The trial court is not required to assign any particular weight to any specific matters at sentencing. *State v. Parfait*, 52,857 (La. App. 2 Cir. 8/14/19), 278 So. 3d 455, *writ denied*, 19-01659 (La. 12/10/19), 285 So. 3d 489.

Second, an appellate court must determine if the sentence is constitutionally excessive. *State v. Smith*, 01-2574 (La. 1/14/03), 839 So. 2d 1. A sentence is unconstitutionally excessive when it imposes punishment grossly disproportionate to the severity of the offense or constitutes nothing more than needless infliction of pain and suffering. *State v. Bonanno*, 384

8

So. 2d 355 (La. 1980); *State v. Smith*, *supra*. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S. Ct. 615, 136 L. Ed. 2d 539 (1996).

A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166; *State v. West*, *supra; State v. Meadows*, 51,843 (La. App. 2 Cir. 1/10/18), 246 So. 3d 639, *writ denied*, 18-0259 (La. 10/29/18), 254 So. 3d 1208. The sentencing court has wide discretion to impose a sentence within the statutory limits, and the sentence imposed will not be set aside as excessive absent a manifest abuse of that discretion. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So. 2d 7; *State v. Allen*, *supra*. On review, an appellate court does not determine whether another sentence may have been more appropriate but whether the trial court abused its discretion. *State v. Williams*, *supra; State v. Tubbs*, 52,417 (La. App. 2 Cir. 11/20/19), 285 So. 3d 536, *writ denied*, 20-00307 (La. 7/31/20), 300 So. 3d 404, *on recons.,* 20-00307 (La. 9/8/20), 301 So. 3d 30, and *writ denied,* 20-00307 (La. 9/8/20), 301 So. 3d 30.

When two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. La. C. Cr. P. art. 883. However, concurrent sentences arising out of a single course of conduct are not mandatory, and consecutive sentences are not necessarily excessive. *State v. Green*, 54,955

(La. App. 2 Cir. 4/5/23), 361 So. 3d 546; *State v. Dale,* 53,736 (La. App. 2 Cir. 1/13/21), 309 So. 3d 1031. It is within the trial court's discretion to make sentences consecutive rather than concurrent. *State v. Green*, *supra*; *State v. Dale*, *supra*. The trial court's failure to articulate specific reasons for consecutive sentences will not require a remand if the record provides an adequate basis to support separate sentences. *State v. Green*, *supra*; *State v. Williams*, 52,052 (La. App. 2 Cir. 6/27/18), 250 So. 3d 1200.

The trial court stated during the sentencing hearing that it "considered all the facts under Article 894.1(B), both mitigating and aggravating." The court identified La. C. Cr. P. art. 894.1(B)(5), (B)(6), (B)(9), (B)(10), (B)(18), and (B)(19) applied in this case and stated a factual basis for each aggravating factor listed above. The trial court also stated that it did not find any mitigating circumstances to apply, but it noted the defendant's age at the time the crimes were committed. The defendant received a sentence of life imprisonment at hard labor without sentencing benefits for the second degree murder to the extent that he complies and qualifies with the conditions enumerated in La. R.S. 15:574.4(F), fifty years at hard labor without sentencing benefits for the attempted second degree murder, and ten years at hard labor along with a $5,000 fine plus court costs for aggravated assault with a firearm. The sentences are to be served consecutively. Based on our review of the sentencing transcript, we find that the trial court adequately considered the provisions of La. C. Cr. P. art. 894.1 in sentencing the defendant, and regardless, the record supports all of the sentences even without the trial court's oral reasons.

After shaking hands to end what at best could be considered a minor disagreement, the defendant unhesitatingly shot three human beings, killing

10

one of them instantly and seriously injuring two others. Additionally, the defendant was only connected to the murder — one year later — after engaging in a high-speed chase with police, where he crashed a vehicle, fled the scene, and left the murder weapon behind. Based on these findings, the record provides an adequate basis to support consecutive sentences in spite of the trial court's failure to articulate reasons for the imposition of consecutive sentences. The defendant showed a severe disregard for the value of human life when he shot three people merely to demonstrate his intolerance for perceived disrespect. Therefore, we find that the consecutive sentences are *not* constitutionally excessive, nor do they shock the sense of justice and demonstrate a needless infliction of pain and suffering.

*Fine and Court Costs*

The trial court imposed a fine and court costs of $5,000 without holding a hearing regarding the defendant's ability to pay. The defendant argues that this fine is excessive and that such a hearing was required. The defendant also asserts that his $5,000 fine is illegal because he is presumed indigent due to his representation by court-appointed counsel. He further asserts that he "may not be incarcerated simply because he is unable to pay a fine which is part of his sentence."

Courts have found representation by court-appointed counsel and the Louisiana Appellate Project to be presumptive evidence of indigency when deleting default time. *State v. Belton*, 11-948 (La. App. 3 Cir. 3/07/12), 88 So. 3d 1159. However, in *State v. Dickerson*, 579 So. 2d 472 (La. App. 3 Cir. 1991), the third circuit stated, "we find that the trial court's imposition of a fine upon the indigent defendant in this case, which did not provide for a jail term in the event of default of payment of the fine, is not excessive and

11

is not an illegal sentence." Additionally, in *State v. Williams*, 598 So. 2d 708 (La. App. 5 Cir. 1992), the fifth circuit stated, "the defendant's further contention that an indigent may not be sentenced to pay a fine and costs, however, is an inaccurate statement of law. An indigent defendant may not be sentenced to *additional* jail time for failure to pay a fine or costs." We note that the trial court did not subject the defendant to additional incarceration for failure to pay a fine and court costs. Therefore, we find that the defendant's contention that the imposition of a fine is illegal because he is indigent to be without merit.

We observe that the defendant was sentenced on September 12, 2022. Effective August 1, 2022, La. C. Cr. P. art. 875.1 was amended and reenacted to require a financial hardship hearing. La. C. Cr. P. art. 875.1 states, in pertinent part:

> Notwithstanding any provision of law to the contrary, prior to ordering the imposition or enforcement of *any* financial obligations as defined by this Article, *the court shall conduct a hearing* to determine whether payment in full of the aggregate amount of all the financial obligations to be imposed upon the defendant would cause substantial financial hardship to the defendant or his dependents. (emphasis added).

Before the imposition of the $5,000 fine, the trial court should have held a hearing pursuant to La. C. Cr. P. 875.1. Since a hearing was not held, we vacate the $5,000 fine, and we remand the matter to the trial court for the required hearing. In doing so, we decline to address its excessiveness at this time.

## CONCLUSION

For the foregoing reasons, we affirm the defendant's convictions and sentences imposed for second degree murder and attempted second degree murder. While we affirm the defendant's conviction for aggravated assault

with a firearm, we vacate the portion of the sentence imposing a $5,000 fine. We remand this case for a hearing pursuant to La. C. Cr. P. art. 875.1 to determine the defendant's ability to pay a fine.

**CONVICTIONS AFFIRMED; SENTENCES FOR SECOND DEGREE MURDER AND ATTEMPTED SECOND DEGREE MURDER AFFIRMED; SENTENCE FOR AGGRAVATED ASSAULT WITH A FIREARM, VACATED, IN PART; CASE REMANDED WITH INSTRUCTIONS.**